ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION



| | |
|---|---|
| JOHN TUFF, | ) |
| Plaintiff, | ) |
| v. | ) CV 311-077 |
| BILLY COOPER, Eastman Police Department, et al., | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

At the time of the events giving rise to the above-captioned case brought pursuant to 42 U.S.C. § 1983, Plaintiff was not incarcerated, but was rather, in his words, "on the run." (Doc. no. 1, p. 4.) Plaintiff is presently incarcerated at Sumter County Correctional Institute ("SCCI") in Americus, Georgia, and he is proceeding *pro se* and *in forma pauperis* in this case. Before the Court is Defendants' motion for summary judgment. (Doc. no. 50.)

In this case, Plaintiff contends that Defendant Widener used excessive force when arresting him and that Defendant Cooper acted with deliberate indifference to his safety in violation of his Eighth Amendment constitutional rights. (See generally doc. nos. 1, 13.) Defendants argue in their motion for summary judgment that Plaintiff's claims are untimely and therefore barred by the statute of limitations; that they are entitled to qualified immunity; that, to the extent that Plaintiff's claims can be construed as invoking state law against the City of Eastman, the City of Eastman enjoys sovereign immunity; and that Plaintiff cannot recover punitive damages from Defendants. (See generally doc. no. 50-2.) For the reasons set forth

below, the Court **REPORTS AND RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** (doc. no. 50), that a final judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

I. **BACKGROUND**

A. **Factual History**

Plaintiff was "on the run" at the time that the alleged events giving rise to his complaint occurred, and he filed the instant complaint subsequent to his eventual arrest and incarceration. (See doc. no. 1.) Defendants Billy Cooper and Gary Widener are police officers for the City of Eastman, Georgia. (Doc. no. 34 (hereinafter "Widener Aff."), ¶ 3; doc. no. 35, (hereinafter "Cooper Aff."), ¶ 3.) On July 19, 2009, Defendants Cooper and Widener responded to a call from the residence of Mr. Cleve Showers, who stated that an "unwanted person" was at his residence. (Widener Aff. ¶ 4; Cooper Aff. ¶ 4.) Upon arrival at Mr. Showers' residence, Mr. Showers told Defendants Cooper and Widener that he wanted Plaintiff to stay off his property and that Plaintiff was currently at the house next door. (Widener Aff. ¶ 6, Ex. A, p. 6; Cooper Aff. ¶ 6, Ex. A, p. 6.) Defendants Cooper and Widener observed a black male wearing a blue button-down shirt walking off the steps of the porch at the house next door, and Defendant Cooper directed his flashlight at the man and told him to approach them. (Id.) The unidentified man looked at Defendants, started walking quickly toward the corner of a trailer behind Mr. Showers' residence, and then "took off running." (Id.)

Defendants did not see Plaintiff in the vicinity, and they accordingly left the area, circled the block, parked their vehicle nearby, and walked back down the street toward Mr. Showers' residence. (Id.) Defendants then observed the unidentified man walk back onto the same porch where he had been seen previously and heard other people on the porch say that

2

Defendants must have mistaken the man for Plaintiff. (Id.) Defendant Cooper then approached the porch with his taser in hand, told the unidentified man to "come off the porch," and asked the man why he had run. (Id.) The man replied that he had gone to his mother's house to "get some food," and Defendant Cooper accordingly handcuffed him and arrested him for obstruction of justice. (Id.)

At that point, Plaintiff came out of the house and yelled, "I'm the one you motherfuckers are looking for! Let him go you white crackers!" (Id.) Plaintiff then "came storming off the porch in a threatening manner" toward Defendants. (Id.) Defendants told him to stop, and when he did not, one of the Defendant officers shot him with a taser. (Id.) Plaintiff then fell to the ground, and Defendants ordered him to roll over and put his hands behind his back. (Id.) When Plaintiff refused to do so and instead attempted to remove the taser cables from his body, one of the Defendant officers shot him with a taser a second time, at which point he became compliant and was arrested. (Id.)

### B. Filing and Procedural History

On March 30, 2012, Defendants filed a motion to dismiss based on the alleged untimeliness of Plaintiff's complaint. (Doc. no. 29.) Specifically, Defendants asserted that Plaintiff had two years from July 19, 2009, within which to file his claims per the applicable statute of limitations for § 1983 claims, but that he did not deliver his complaint to prison officials with proper postage affixed to the envelope until July 27, 2011, more than two years later. (Doc. no. 29-1, pp. 2-3.) The Court denied Defendants' motion to dismiss, noting in particular that the case cited by Defendants in support of their motion, Dison v. Whitley, 20 F.3d 185 (5th Cir. 1994), appeared to be inapposite to the instant circumstances because, although the prisoner in that case was responsible for posting his own legal mail, there was no

indication that such was the case for Plaintiff here. (Doc. no. 42, pp. 8-9.) The Court explained that, while the court in Dison had the "benefit of information regarding the mail policy" applicable to that plaintiff's complaint, Defendants in this case had yet to provide any information concerning SCCI's mail policy that would allow the Court to determine whether the two policies were equivalent. (Id.) The Court noted, however, "it may well be that [SCCI] maintains a policy similar to that applicable in Dison," and that, under those circumstances, "Plaintiff would bear the responsibility for failing to affix sufficient postage when his complaint was initially mailed, and his untimely re-mailing would render his complaint time-barred." (Id. at 9.)

As recounted by Defendants, on July 15, 2011, following his arrest and incarceration, Plaintiff attempted to mail the instant complaint, but it was returned to him at SCCI due to insufficient postage. (See doc. no. 1-1.) Plaintiff then attached sufficient postage and mailed his complaint for a second time; the envelope utilized in his second attempt at filing is postmarked July 27, 2011, the same date that his complaint was received and filed by the Clerk's Office in the Middle District of Georgia.[1] (Id.) In his complaint, which is not dated, Plaintiff alleges that Defendant Widener used an excessive amount of force in arresting him and that Defendant Cooper acted in deliberate indifference to his safety in violation of his Eighth Amendment constitutional rights. (See doc. no. 1; doc. no. 13.)

According to the deposition of Sharon Terry, who was employed as the records manager at SCCI at the time Plaintiff filed his complaint, there are mailing procedures at SCCI

---

[1] United States District Judge C. Ashley Royal ordered that the instant case be transferred to the Southern District of Georgia on July 29, 2011, because Defendants are located and the alleged events occurred in Dodge County, which is in the Southern District. (Doc. nos. 5, 6.)

4

that prisoners are required to follow. (Doc. no. 53 (hereinafter "Terry Depo."), pp. 7-8.) Prisoner mailings are placed in the mail on the day that they are received or, at the latest, on the following day. (Id. at 8.) In other words, a prisoner letter mailed on a Wednesday would have had to have been delivered to the appropriate prison officials on Wednesday or the immediately preceding Tuesday. (Id.) Applying those procedures to the instant facts, Ms. Terry asserts there is "no way" Plaintiff's complaint mailed on July 27, 2011 was delivered to prison staff for mailing before July 26, 2011. (Id.) Additionally, Ms. Terry explains that prisoners who are not indigent are required to provide their own stamps by receiving them in the mail from family members or purchasing them from the prison store. (Id. at 9.) If a prisoner is indigent, he is required to fill out an "indigent postage form" prior to mailing that provides details as to what he is mailing, and the records manager then completes the appropriate paperwork. (Id. at 10.) If a prisoner does not complete an indigent postage form and does not have money in his account, his letter will not be mailed. (Id. at 10-11.) It is the prisoner's responsibility to follow the correct mailing procedures by either acquiring the requisite amount of postage or filling out an indigent postage form. (Id. at 11.)

## II. DISCUSSION

Plaintiff's response in opposition to Defendants' motion for summary judgment (doc. no. 59) does not directly respond to the individual assertions of fact in Defendants' statement of material facts (doc. no. 50-1) as contemplated by the Local Rules. See Loc. R. 56.1 (instructing parties moving for summary judgment to attach a separate statement of material facts and explaining that "all material facts set forth in the statement . . . will be deemed admitted unless controverted by a statement served by the opposing party"). In fact, Plaintiff merely reasserts the claims that the Court has permitted to go forward and attempts to assert

5

new due process claims under the Fourteenth Amendment. (See generally doc. no. 59.) Thus, pursuant to Loc. R. 56.1, the facts set forth in Defendants' statement of material fact are deemed admitted. (Doc. no. 50-1.) Nonetheless, the Court acknowledges that it must carefully consider the merits of Plaintiff's case despite the unopposed nature of Defendants' motion for summary judgment. United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Florida, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.").

A. **Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Applicable substantive law identifies which facts are material in a given case.[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*).

---

[2]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

On the other hand, if the <u>non-moving</u> party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Plaintiff's Claims are Barred by Statute of Limitations

State law controls the length of the statute of limitations period in § 1983 actions. Lawson v. Glover, 957 F.2d 801, 803 (11th Cir. 1987). In Georgia, such claims must be brought within two years of their accrual. Leal v. Ga. Dep't of Corrs., 254 F.3d 1276, 1279 (11th Cir. 2001); Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986). Although

7

state law determines the applicable statute of limitations period for claims under § 1983, federal law determines the date of accrual. See Brown v. Ga. Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003); Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996). Under § 1983, a claim accrues when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Brown, 335 F.3d at 1261 (quoting Rozar, 85 F.3d at 561-62).

Under the "prison mailbox rule," a prisoner's complaint is deemed to be filed on the date it is delivered to prison officials for mailing. Houston v. Lack, 487 U.S. 266, 276 (1988); United States v. Glover, 686 F.3d 1203, 1205 (11th Cir. 2012); see Garvey v. Vaughn, 993 F.3d 776, 783 (11th Cir. 1993) (extending prison mailbox rule to claims brought pursuant to § 1983 and Federal Tort Claims Act). "Unless there is evidence to the contrary, like prison logs or other records, we assume that a prisoner's motion was delivered to prison authorities on the day he signed it." Glover, 686 F.3d at 1205 (citation omitted); see Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999) (*per curiam*) (explaining that as a general rule, the date upon which a prisoner's complaint is signed or executed constitutes "the earliest date on which [the complaint] could be considered filed."). Furthermore, under the prison mailbox rule, the burden is on the party challenging the timeliness of a prisoner's legal filings to prove the date on which the prisoner delivered his legal filings to be mailed. Ellis v. Hooks, 219 F. App'x 865, 867 (11th Cir. 2007) (*per curiam*) (citing Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (*per curiam*)); see also Clay v. United States, No. 2:06-CV-09-RWS, 2007 WL 4336356, at *3 (N.D. Ga. Dec. 6, 2007).

Here, Plaintiff knew or should have known of the injuries alleged in his complaint, as well as who injured him, when the injuries occurred on July 19, 2009, and he therefore had

until July 19, 2011 within which to timely file the claims at issue in the instant suit. See Leal, 254 F.3d at 1279. As noted above, however, although his complaint is signed, it is not dated. (Doc. no. 1, p. 5.) Thus, the Court turns to the postmark date of Plaintiff's pleadings to determine the date these pleadings were delivered to prison officials for mailing. See McCiskill v. Smith, No. 3:09cv298/MCR/EMT, 2012 WL 612813, at *1 n.1 (N.D. Fla. Jan. 25, 2012) (looking first to the date of the complaint and postmark date on envelope before deeming case filed on the date received by the clerk of court); United States v. Bell, 203 F. Supp. 2d 1287, 1291 (S.D. Ala. 2002) (using date of prison's "block stamp" on prisoner's mailing envelope as date pleadings were delivered to prison officials).

As noted above, Plaintiff's complaint bears two mailing dates: the first on July 15, 2011, and the second on July 27, 2011. (See doc. no. 1, p. 6.) If the first date is deemed to be the date the complaint was filed, Plaintiff's complaint is timely under the two-year statute of limitations. By contrast, if the latter of these two dates is deemed to be the filing date, then Plaintiff's complaint will be time-barred. See Leal, 254 F.3d at 1279. Defendants assert that the latter date controls, and they cite primarily to Dison v. Whitley for the proposition that the prison mailbox rule does not apply where a prisoner's complaint is untimely submitted due to his initial failure to affix proper postage to his legal mail. (Doc. no. 50-2, pp. 4-5.) Specifically, Defendants argue that Plaintiff, per SCCI's mail policy, bore the responsibility for placing sufficient postage on his outgoing legal mail, and that his complaint is time-barred due to his failure to do so prior to the expiration of the statute of limitations. (See id.)

In Dison, a Louisiana prisoner attempted to appeal the denial of his habeas corpus petition seven days before the expiration of the appeal deadline; however, the envelope in which he mailed his notice of appeal was returned to him because he had tried to send it

9

through the prison's "indigent mail" system despite having sufficient funds to pay for postage. Dison, 20 F.3d at 186. The prisoner's second attempt at mailing the notice of appeal – this time with proper postage – was untimely. Id. at 187. The Fifth Circuit Court of Appeals upheld the dismissal of the prisoner's appeal as untimely, reasoning that his failure to affix proper postage when he first had the opportunity "did not constitute compliance with doing all he reasonably could have done to ensure that documents were received by the clerk of court in a timely manner." Id. (internal punctuation and quotation omitted); see also Clay, 2007 WL 4336356, at *3 (citing Dison and noting that "a prisoner cannot invoke the mailbox rule if his pleading is filed late because of his failure to affix proper postage, to properly address outgoing mail, or to follow reasonable prison regulations governing outgoing legal mail.")

In light of the information that Defendants have now provided concerning SCCI's prisoner mailing policy, it is clear that the policy is fundamentally identical to that described in Dison, in that prisoners at SCCI are responsible for affixing sufficient postage to their mailings or, alternatively, completing the requisite paperwork for indigent prisoners. (See generally Terry Depo.) Given that the two mail policies are essentially the same, per the Court's explanation in its prior Report and Recommendation – which is described supra (see also doc. no. 42, p. 9) – Plaintiff's re-mailing of his complaint on July 27, 2011, is time-barred. Specifically, because the two-year statute of limitations expired on July 19, 2011, that re-mailing was untimely by eight days. Even if the Court were to assume *arguendo* that Plaintiff delivered his complaint to prison officials for mailing on July 26, 2011, based on SCCI's policy of mailing prisoner submissions on the day of the submission or, at the latest, the next day (Terry Depo. pp. 8-9), his complaint would have still been untimely by seven days.

In short, Plaintiff has not demonstrated a genuine dispute as to a material fact

10

concerning the timeliness of the claims set forth in his complaint under the two-year statute of limitations for § 1983 claims. Therefore, Defendants' motion for summary judgment should be granted.[3]

III. CONCLUSION

In sum, the Court **REPORTS AND RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** (doc. no. 50), that a final judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 28th day of June, 2013, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE

---

[3] In light of the Court's conclusion that Defendants are entitled to summary judgment for the reasons set forth above, it is unnecessary to address the merits of Defendants' remaining arguments concerning qualified immunity and punitive damages. (Doc. no. 50-2, pp. 5-11, 13.) As to Defendants' argument concerning Plaintiff's potential state law claims (id. at 11), the Court did not permit any such claims to proceed in its October 18, 2011 Order, and any argument concerning the same is irrelevant and unwarranted for that reason (see doc. no. 13, p. 4).

11